THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAMES M. KOLLAR,<br><br>                Plaintiff,<br><br>    v.<br><br>SUN LIFE ASSURANCE COMPANY OF CANADA,<br><br>                Defendant. | CASE NO. C20-5278-JCC<br><br>ORDER |

       This matter comes before the Court on the parties' cross motions for final judgment (Dkt. Nos. 13, 20). Having thoroughly considered the briefing and the relevant record, and finding oral argument and a bench trial unnecessary, the Court DENIES Plaintiff's motion (Dkt. No. 20) and GRANTS Defendant's motion (Dkt. No. 13) for the reasons described herein.

       Defendant previously asked the Court to enter final judgment in its favor pursuant to Federal Rule of Civil Procedure Rule 52. (Dkt. No. 13.) The Court held the motion in abeyance to allow Plaintiff the opportunity to cross-move for final judgment. (*See* Dkt. No. 19.) Plaintiff has so moved. (*See* Dkt. No. 20.) Plaintiff now argues that the record before the Court establishes that he is entitled to long-term disability ("LTD") benefits from Defendant. (*See generally* Dkt. No. 20.) The Court previously discussed the relevant factual background and standard of review in this Employee Retirement Income Security Act of 1974 case, (*see* Dkt. No. 19), and will not

repeat that information here.

According to Defendant's LTD policy, Plaintiff is entitled to LTD benefits by virtue of his employment with the policyholder if, prior to the termination of his employment, he "provide[s] proof of . . . Total . . . Disability." (Dkt. No. 14-1 at 69, 79.) Plaintiff asserts that he did so, and that this is reflected in the record before the Court. (*See generally* Dkt. No. 20.)

The policy defines total disability as the inability "to perform all of [one's] material and substantial duties." (Dkt. No. 14-1 at 43.) It is undisputed that Plaintiff was terminated on May 11, 2018. (*See generally* Dkt. Nos. 13, 20.) At issue, then, is whether the proof that Plaintiff relies on is sufficient to establish, by a preponderance of the evidence,[1] that he was unable to perform his material and substantial job duties prior to this date.

Plaintiff argues that the record supports his contention that, prior to his termination, he was unable to perform his duties due to a variety of progressive health conditions, which began in 2016. (Dkt. Nos. 20 at 7, 22 at 2–3.) This contention is belied by a February 2018 performance correction notice issued by Plaintiff's employer. (*See* Dkt. No. 14-1 at 199–203.) At the time, Plaintiff responded to the notice by describing the circumstances he believed contributed to his performance. (*Id.* at 201–02.) He did not include his progressive health issues. (*See generally id.*) Notably, when his employer terminated Plaintiff a few months later, it indicated that it did so for much of the same reasons as those identified in the performance correction notice. (*See id.* at 205.) While Plaintiff now argues that his progressive health issues resulted in these deficiencies, (*see generally* Dkt. No. 20, 22), the record, taken as a whole, does not support this contention.

Nor does the record support Plaintiff's contention that he was physically unable to do his job. Notably, Plaintiff's employer described the physical demands of his position as "sedentary." (Dkt. No. 14-1 at 118, 655.) It required sitting and/or standing for long periods of time, occasionally lifting up to 10 pounds, and walking up to two and a half hours a day. (*Id.*) In arguing that he could not meet these physical demands, Plaintiff relies on advice he claims he

---

[1] *See Muniz v. Amec Const. Mgmt., Inc.*, 623 F.3d 1290, 1294 (9th Cir. 2010).

received in 2016 from his treating physician, Patricia Papadopoulos, MD. (Dkt. No. 20 at 5 (citing Dkt. No. 14-1 at 357).) At the time, Dr. Papadopoulos advised Defendant to work from home "on a regular basis" to avoid the physical toll of commuting to work. (Dkt. No. 14-1 at 357.) But it is undisputed that Plaintiff's employer allowed him to work from home two days per week based on this advice and, in fact, this accommodation "allowed him to continue working as long as he did." (Dkt. No. 20 at 5.)

Plaintiff also relies on a June 12, 2018 after-the-fact attending physician statement ("APS") prepared by Dr. Papadopoulos. (*See* Dkt. No. 20 at 5 (citing Dkt. No. 166).) According to the APS, Plaintiff could engage in daily activities but was limited to sitting for no greater than 15–20 minutes at a time before needing to change positions. (Dkt. No. 166.) Neil Moody, PA, later amended the statement, indicating that Plaintiff had "severe limitations in range of motion, mobility and pain" which "restrict[ed] him from lifting more than 10 pounds" other than "rarely," and could not "walk[] more than necessary for daily activities." (*Id.*)

Despite Plaintiff's contentions otherwise, it would appear to the Court that the limitations described in the APS do not conflict with the physical duties required of Plaintiff. (*See* Dkt. No. 14-1 at 118, 655.) Moreover, even if they did, the APS was not prepared contemporaneous to Plaintiff's treatment. At Plaintiff's March 22, 2018 medical visit, which most closely pre-dated his termination, Plaintiff reported to Mr. Moody that his pain had actually *gone down* since his last visit. (Dkt. No. 14-1 at 237.)

Plaintiff next suggests that two determinations should be controlling: (1) the Social Security Administration's disability award based on a May 11, 2018 starting date and/or (2) Dr. Papadopoulos determination, in the June 2018 APS discussed above, that Plaintiff's disability began on April 5, 2018 (Dkt. No. 20 at 3, 8 (citing Dkt. No. 14-1 at 166, 208).) Neither are persuasive to the Court.

As for the Social Security Administration's assessment, the record contains no rationale or support for the agency's determination. (*See generally* Dkt. No. 14-1 at 208–13.) It only

ORDER
C20-5278-JCC
PAGE - 3

contains the award letter, which indicated that the agency's disability determination was based on the agency's disability criteria. (*Id.* at 208 (noting that the agency "found that [Plaintiff] became disabled *under our rules* on May 11, 2018." (emphasis added)).) The record contains nothing to suggest that the agency's rules and criteria are consistent with the relevant criteria in this case, as articulated in Defendant's LTD policy. (*Compare id.* at 208, *with id.* at 43.)

Nor is the April 5, 2018 disability determination provided in the June 2018 APS of help. (*See* Dkt. No. 14-1 at 166.) First, as Judge Leighton pointed out, *see Kollar v. Sun Life Assurance Co. of Canada*, 2019 WL 6839335, slip op. at 4 (W.D. Wash. 2019), this determination is not supported by *any* medical documentation. (*See* Dkt. No. 14-1 at 166.) Second, the April 5, 2018 is the date the disability, *as described by Dr. Papadopoulos and/or Mr. Moody in the APS*, began. (*See* Dkt. No. 14-1 at 166.) As discussed above, the limitations contained in the APS do not suggest that Plaintiff was incapable of doing his job. In fact, it said he could perform "daily activities, [but] with limitations." (*Id.*) And those limitations do not appear to conflict with the material and substantial job duties of a software engineer such as Plaintiff. Therefore, this was not a "total disability" under the policy.

Ultimately, Plaintiff points to little evidence in the record to establish that he was unable to perform his job functions due to a disability *prior to* his termination date. Further, the evidence he does point to is rebutted by countervailing evidence. For this reason, Plaintiff's motion (Dkt. No. 20) is DENIED and Defendant's motion (Dkt. No. 13) is GRANTED. Final judgment is awarded to Defendant.

DATED this 16th day of September 2021.

John C. Coughenour
UNITED STATES DISTRICT JUDGE